By the Court. Sandford, J.
There is no doubt that while the injured vessel remained at Havana, and before the partial repairs were made there, the plaintiffs were entitled to abandon, and to recover for a total loss. Full repairs might • have been made in that port, and the expense of such repairs at the port of necessity, furnishes the criterion for determining whether the loss be partial or total. The plaintiffs were under no obligation to make temporary repairs, so as to bring the vessel to a port where she could be completely refitted at less expense. (The American Insurance Company v. Center, 4 Wen. 45.)
• The defence rests upon the fact, that before the abandonment was actually made by the owners in New York, the barque had been so far repaired at Havana, as to enable her to proceed to New York with a light cargo, and had actually sailed from Havana a day or two before. The expense of the full repairs subsequently made in New York, after the proper deduction of one-third, added to the cost of the partial repairs at Havana, amounted, it is said, to less than half the valuation of the barque, and thus there was no constructive total loss. The defendants rely with great confidence on the case of Dickey v. The American Insurance Company, 3 Wen. 658 ; and a case of the same plaintiff against The New York Insurance Company, arising on a policy on the same vessel, reported in 4 Cow. 222. There the ship having met with disasters, was fully repaired at the port of necessity, at an' expense exceeding three-fourths her value, and was proceeding on her voyage with such of her cargo as had not been sold, at the time the abandonment was made. It was held, that by fully repairing, the master as the agent of the assured, converted the total into a partial loss, before the date of the attempted abandonment, and that the owner could recover for a partial loss only.
The important difference between the case of Dickey and the one before us, is this. The voyage in that case, so far from being broken up, was actually consummated; and the ship when abandoned, was not only in good safety, but was doubtless a better ship than she was before the disaster. In this case, ■the voyage was lost; for the freight earned arose merely from *488 putting on board sufficient weight to make a suitable ballast; and so far from being in good safety when she was abandoned, she was totally unfit to carry a cargo ; and her subsequent repairs here, cost more than half her valuation.
The condition of the vessel at the time of the abandonment, is undoubtedly the test of the right to abandon. As the barque was situated, when the plaintiffs abandoned, within one or two days sail of Havana, there was still a total loss, unless the owners were bound to bring her to New York for repairs.
It is not claimed that they were so bound, unless the act of the master in putting the barque in a condition to come to New York for repairs, be deemed the act of the owners, and constituted an election to repair, instead of abandoning.
In point of fact, there is no reason for believing that there was any intention of the master to make full repairs. He was unquestionably acting for what he supposed was the best interest of all concerned. And it was the interest of the underwriters, whether the loss was partial or total, to have the barque repaired here, rather than at Havana.
Then was the master’s act, an election on the part of the owners to repair the vessel ?
It is conceded that in general, the master cannot, by any thing he does, impair the right to abandon ; but it is said the act of repairing is considered an exception. This exception is sustained by the case of Dickey, before cited, and in this state may be said to be founded on that decision. As the incapacity of the vessel to pursue her voyage, is the ground of an abandonment ; so, in our judgment, the act of repairing, which is to divest the right to abandon, must be performed with the intent to make the vessel seaworthy, so that she may prosecute the voyage. Such were the repairs in the case of Dickey, which were held to defeat the subsequent abandonment. The vessel had been fully restored. The same circumstances existed in Humphrey v. The Union Insurance Company, (3 Mason, 429,) where the master’s repairs were held to deprive the assured of the right to abandon.
It was conceded in Dickey v. New York Insurance Company, by the learned counsel for the underwriters, (now Mr. Justice *489 Duer,) that in the case of a plain total loss, where the voyage was palpably gone, the master, before abandonment, acts for those concerned, and is so far the agent for the assurer. One principle reason why the master’s election to repair takes away the right to abandon, is that the assurers are always entitled to determine for themselves whether they will repair the vessel or not.
This reason, it is apparent, does not apply to a case where mere partial repairs are made, not in order to prosecute the voyage, but to bring the vessel from a port of necessity to one where she may be fully repaired, at half the expense. Such repairs are purely of the nature of salvage, for the benefit of all concerned. Each case of this kind must be governed by its peculiar circumstances. No master would take the responsibility of such a course, unless there was a moral certainty that a substantial salvage would be effected by it; and his responsibility, with the requirement of good faith, seems to furnish a sufficient protection against wrong to the underwriter. (See Milles v. Fletcher, Dougl. 231.) In many cases, from necessity, the master is compelled to take various important steps for the preservation of the ship, or what remains of her after the disaster, and before he can communicate with either the owners or the assurers. In such cases, he is bound to act as he would if the property were his own ; and if the loss be total, his acts in that intervening period are deemed those of the assurers. The, abandonment, when effectually made, relates back to the time of the loss; (Clarkson v. Phœnix Insurance Company, 9 Johns. 1; Waddell v. Columbian Insurance Company, 10 Ibid. 61;) and it would be unreasonable to hold that partial repairs, made for the preservation of the property, are the act of. the assured, and deprive them of the right to abandon.
The case of Hall v. The Franklin Insurance Company, (9 Pick. 466,) cited by the defendants, differs from the one at bar, in the essential fact, that the vessel insured was not so much injured that she could not be taken from Key West, the port of distress, to New Orleans, or even to Boston, without any repairs whatever. In fact, she sailed to Boston, and was there repaired. If the barque in question, had been in a condition to sail from *490 Havana to New York, after the disaster, without being partially repaired, the case would have been parallel to that in 9th Pickering. It is not there decided that the owners are bound to make partial repairs at the port of distress, so as to take the vessel to another port where repairs can be made at less expense than they can be made at the former; the voyage in the meantime being broken up.
We have examined the case without reference to the clause in the policy, providing that the acts of the insured or insurers, in recovering, saving and preserving the property insured, in case of disaster, shall not be considered as a waiver or acceptance of an abandonment. The good sense of the contract leads to this conclusion, without a special provision in the policy; and we think that partial repairs, made in good faith by the master, at the port of distress, in order to sail his vessel to another port for full repairs at a less expense, and not for the purpose of restoring the vessel and continuing the voyage, are to be deemed acts done in preserving the property insured, which do not impair the owner’s right to abandon.
In the suit upon the freight policy, nothing need be said, as there was a technical total loss of the vessel.
The proof, however, shows presumptively, a like total loss of the freight, independent of the loss of the barque.
The plaintiffs are entitled to judgment in both suits, as for a total loss.